U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

2020 MAR -9  PM 12: 16

CLERK

BY _____
DEPUTY CLERK

2:20·cv·33

| | |
|---|---|
| WESLEY WADE BLACK, LAURA BLACK, and LAURA BLACK, as the mother and natural guardian of R.C.B., an infant under the age of eighteen, <br><br>                 Plaintiffs, <br><br>    – against – <br><br> UNITED STATES OF AMERICA, <br><br>                 Defendant. | **COMPLAINT** |

Plaintiffs Wesley Wade Black, Laura Black, and R.C.B. ("Plaintiffs") by and through their

counsel, Perrone Law PLLC and Cullenberg & Tensen PLLC, complaining of Defendant United

States of America ("Defendant"), allege as follows:

**THE PARTIES**

1.      Plaintiff Wesley Wade Black is a resident of the State of Vermont, County of

Windsor.

2.      Plaintiff Laura Black is married to Plaintiff Wesley Wade Black, and is also a

resident of the State of Vermont, County of Windsor.

3.      Plaintiff R.C.B is the three-year-old son of Plaintiffs Wesley Wade Black and Laura

Black, and is also a resident of the State of Vermont, County of Windsor.

4.      At all times relevant herein, the United States Department of Veterans Affairs

("VA") is a department, agency and/or bureau of Defendant.

5.      At all times relevant herein, Defendant funded, managed, owned, operated and/or

supervised White River Junction VA Medical Center, 163 Veterans Drive, White River Junction,

Vermont 05009 ("WRJ").

6.     At all times relevant herein, Defendant, by and through its agents, agencies, departments, servants and/or employees, provided diagnostic, health and medical services to patients of WRJ, including, but not limited to, Plaintiff Wesley Wade Black.

7.     At all times relevant herein, the health and medical services, and other acts and omissions, giving rise to the claims asserted herein occurred, and/or were provided to Plaintiff Wesley Black, at WRJ by agents, employees and/or servants of Defendant, including, but not limited to, Katherine Devine, MD, Emilie V. Hill, MD, John G. Ryder, MD, David J. Nagel, MD, Marshall A. Guill, MD, Anthony Joseph Bambara, MD, Gladys J. Frankel, Ph.D., Virginia Arvold, PA, Crystal Colby, PA, Alisha S. Hartley, RN, Caroline Nord, NP, and Anne-Marie Roberts.

8.     At all times mentioned herein, the term "Defendant" refers to and includes Defendant United States of America, as well as its agents, agencies, departments, hospitals, servants and/or employees, including, but not limited to, the VA, WRJ, Katherine Devine, MD, Emilie V. Hill, MD, John G. Ryder, MD, David J. Nagel, MD, Marshall A. Guill, MD, Anthony Joseph Bambara, MD, Gladys J. Frankel, Ph.D., Virginia Arvold, PA, Crystal Colby, PA, Alisha S. Hartley, RN, Caroline Nord, NP, and Anne-Marie Roberts, as well as other doctors, residents, interns, physician assistants, nurse practitioners and nurses.

## JURISDICTION AND VENUE

9.     This action arises out of negligent and wrongful acts and omissions of agents, employees and/or servants of Defendant while acting within the scope of their respective offices or employment, under circumstances where Defendant, if a private person, would be liable to Plaintiffs in accordance with the laws of the State of Vermont (i.e., the place where the negligent and wrongful acts and omissions occurred).  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1), 28 U.S.C. § 2671, et seq., and the Federal Tort Claims Act.

10.    Venue is properly placed in the United States District Court for the District of Vermont since the occurrence took place in that judicial district, Defendant does business in that judicial district, the witnesses are located in that judicial district and that judicial district is the most convenient place for the trial of this action.

11.    By letter dated February 5, 2020, Plaintiffs each submitted SF-95 Claim Forms for the negligent and wrongful acts and omissions giving rise to the claims asserted herein to the United States Department of Veterans Affairs, Office of Chief Counsel, 251 North Main Street, Winston-Salem, North Carolina 27155, copies of which are annexed hereto as Exhibit A (without the voluminous medical records annexed as an exhibit to each SF-95 Claim Form).

12.    By letter dated February 24, 2020, Defendant, by and through the Office of the General Counsel of the United States Department of Veterans Affairs, denied each of the three aforementioned claims, stating:

> These claims, filed on February 7, 2020, alleged medical malpractice on the part of providers at the White River Junction, VT VA Medical Center from July 2013 to February 2017, in failing to timely diagnose and treat Mr. Black's colorectal cancer with metastases. Based on our investigation it appears Mr. Black learned of his alleged harm on February 27, 2017. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, we deny the claims.

A copy of the letter dated February 24, 2020, denying the claims submitted by Plaintiffs, is annexed hereto as Exhibit B.

13.    This action was duly commenced within six (6) months of the date on which the aforementioned letter was mailed, and all conditions precedent to the Federal Tort Claims Act have been satisfied.

## FACTUAL BACKGROUND

14.    Plaintiff Wesley Wade Black served the United States of America as a reservist with the Vermont Army National Guard, completing tours in Iraq and Afghanistan, during which time he was exposed to burn pits (i.e., an area of a military site that is devoted to open-air combustion of human, food, equipment and other waste), which produce carcinogenic, dangerous, and toxic fumes.

15.    While serving with the Vermont Army National Guard, Plaintiff Wesley Wade Black was awarded the Meritorious Services Medal, Bronze Star with Valor, Purple Heart, and Army Commendation with Valor. He continues to serve his community as a State of Vermont firefighter and, as a result of his continued heroism, was honored as the 2019 Hero of the Year by Heroes Home Advantage, and Hero of the Month, May 2019, by Our Heroes Fund.

16.    Following the completion of his final deployment, Plaintiff Wesley Wade Black began noticing loose stools, persistent diarrhea, and constipation, all of which was accompanied by abdominal and bowel pain, rectal bleeding, bright red blood per rectum, blood clots passing with stool, lower gastrointestinal bleeding, anal tears, anal itching, anal irritation, and bowel disturbance, among other symptoms.

17.    On or about July 11, 2013, Plaintiff Wesley Wade Black presented to WRJ complaining of "chronic diarrhea" with "significant" rectal irritation, at which time he was examined and, subsequently, diagnosed and treated by Defendant, who noted that he "always [has] loose stools, 3-4 times daily about 10-15 min after eating," which "[a]lternates with constipation," and is accompanied by "bleeding from anal irritation," although nothing was done to confirm the source of the bleeding.

18.     With respect to the body weight of Plaintiff Wesley Wade Black, Defendant noted as follows: "Since Afg[h]anistan 2010. 250 --> 175 lbs," which represents an unexplained seventy-five-pound decrease in body weight, accompanied by gastrointestinal discomfort and pain, as well as "chronic diarrhea" of unexplained origin and "significant" rectal irritation, all of which began to occur only after Plaintiff Wesley Wade Black was exposed to the carcinogenic, dangerous, and toxic fumes of burn pits.

19.     Plaintiff Wesley Wade Black was diagnosed with Irritable Bowel Syndrome ("IBS") by Defendant, who incorrectly attributed and declared his aforementioned complaints, signs, and symptoms to be caused by and manifestations of IBS, without conducting or ordering a colonoscopy, or performing or ordering any procedures or tests to rule out cancer and/or confirm the diagnosis of IBS, stating: "Sounds like IBS to me . . . No need for labs today."

20.     On or about May 1, 2014, Plaintiff Wesley Wade Black sought medical care and services from Defendant, and once again complained of suffering from gastrointestinal discomfort and pain, chronic diarrhea of unexplained origin, loose stools three to four times a day within ten to fifteen minutes of eating, constipation, significant rectal irritation, external bleeding from anal irritation, and "rare[] nocturnal [bowel movements]," among other symptoms.

21.     These symptoms were communicated to, and recorded by, Defendant, who – had they possessed the requisite degree of knowledge and skill, and exercised the requisite degree of care – would not have reaffirmed the diagnosis of IBS (as they did), without conducting or ordering a colonoscopy, performing or ordering any procedures or tests to rule out cancer and/or confirm the diagnosis, or informing Plaintiff Wesley Wade Black that a colonoscopy was indicated based on his symptoms to rule out cancer.

22.    On or about July 14, 2014, Plaintiff Wesley Wade Black sought medical clearance for a firefighter test from Defendant, at which time he again complained of the aforementioned symptoms to Defendant, who reaffirmed the diagnosis of IBS, without conducting or ordering a colonoscopy, performing or ordering any procedures or tests to rule out cancer and/or confirm the diagnosis of IBS, or informing Plaintiff Wesley Wade Black that a colonoscopy was indicated based on his symptoms and necessary to rule out cancer.

23.    On or about October 24, 2014, Plaintiff Wesley Wade Black sought medical care and services from Defendant, at which time he again complained of the aforementioned symptoms to Defendant.  This is confirmed by the medical records from October 24, 2014, which state, in pertinent part, as follows:

> Veteran states he has ongoing issues with diarrhea/constipation, but mostly diarrhea. Veteran states he was evaluated and treated by PCP and diagnosed with Irritable bowel syndrome. Veteran states he has rectal itching which he has tried hydrocortisone cream for without much success. Veteran states he also had some rectal bleeding due to IBS. Veteran states he has tried changing his eating habits, less carbs and sugar more protein/fiber without much change in bowel habits. Veteran states 20 minutes after eating he is in the bathroom having a bowel movement, most often loose. Veteran states he has tried elimination diets but also has not found any relationship to certain foods.

24.    The foregoing confirms that the clinically significant diarrhea from which Plaintiff Wesley Wade Black had been continuously, repeatedly suffering, and of which he continuously, repeatedly informed Defendant, was of unexplained origin.  The records from on or about October 24, 2014 also contain a questionnaire in response to which Plaintiff Wesley Wade Black again conveyed the above-referenced complaints, signs and symptoms to Defendant, the pertinent portion of which is depicted below:

```
3. Signs and symptoms
---------------------
Does the Veteran have any signs or symptoms attributable to any non-surgical
non-infectious intestinal conditions?
[X] Yes    [ ] No

        If yes, check all that apply:

        [X] Diarrhea
                If checked, describe:
                    Veteran has loose stools 3-4 times per day.


        [X] Alternating diarrhea and constipation
                If checked, describe:
                    Veteran states he occasionally will have urge to defecate,
                    but will have to strain.



4. Symptom episodes, attacks and exacerbations
----------------------------------------------
Does the Veteran have episodes of bowel disturbance with abdominal distress,
or exacerbations or attacks of the intestinal condition?
[X] Yes    [ ] No

        If yes, indicate severity and frequency: (check all that apply)

        [X] Episodes of bowel disturbance with abdominal distress
```

25.     Defendant failed to conduct or order a colonoscopy, perform or order any procedures or tests to rule out cancer and/or confirm the diagnosis of IBS, or inform Plaintiff Wesley Wade Black that a colonoscopy was indicated based on his symptoms and necessary to rule out cancer, despite that the foregoing signs and symptoms had persisted for several years, and began occurring after Plaintiff Wesley Wade Black was exposed to the carcinogenic, dangerous, and toxic fumes of burn pits.

26.     On or about January 21, 2016, Plaintiff Wesley Wade Black was examined by Defendant, who again diagnosed Plaintiff Wesley Wade Black with IBS, without conducting or ordering a colonoscopy, performing or ordering any procedures or tests to rule out cancer and/or confirm the diagnosis of IBS, or informing Plaintiff Wesley Wade Black that a colonoscopy was indicated based on his symptoms and necessary to rule out cancer.

27.     Defendant also failed to record an accurate medical history from Plaintiff Wesley Wade Black, who, on or about January 21, 2016, had complained of abdominal pain, nausea, diarrhea, constipation, melena, bright red blood per rectum, and indigestion, among other symptoms, all of which he had continuously complained of, and reported to, Defendant, and all of which Defendant had recorded in their records, since on or about July 11, 2013.

28.     Instead of accurately and correctly recording the foregoing complaints and symptoms, Defendant inaccurately and incorrectly recorded the following description: "GI: Denies abdominal pain, nausea, vomiting, diarrhea, constipation, melena, BRBPR, indigestion." This entry directly contradicts the complaints and symptoms conveyed by Plaintiff Wesley Black to Defendant on or about January 21, 2016.

29.     While Defendant did not have any labs drawn on or about January 21, 2016, Defendant noted that Plaintiff Wesley Wade Black was "[d]ue for fasting labs" and will "return on or soon after Tues 01/26/2016 to have labs drawn." The lab results were not provided to, or discussed with, Plaintiff Wesley Wade Black until he affirmatively requested that he be informed of the lab results on or about March 28, 2016.

30.     In the interim, Plaintiff Wesley Wade Black was examined on or about February 3, 2016 by Defendant, who did not discuss the any of the results of the labs that were drawn in January of 2016. Disregarding the lab results and the past medical history of Plaintiff Wesley Wade Black set forth herein and in the medical records generated and maintained by Defendant, Defendant again diagnosed Plaintiff Wesley Wade Black with IBS.

31.     On or about March 28, 2016, Plaintiff Wesley Wade Black again sought medical services from Defendant, "[w]ant[ing] to discuss his recent lab results from his PCP visit this past January." Defendant told Plaintiff Wesley Wade Black that "he had an elevated [aspartate

aminotransferase ("AST")], [alanine transaminase ("ALT")] and [gamma-glutamyl transferase ("GGT")]," which, unbeknownst to Plaintiffs, are predictive of cancer and, even within normal limits, higher serum levels of GGT are associated with an increased cancer risk.

32.    Despite these abnormal lab results and the past medical history of Plaintiff Wesley Wade Black set forth herein and in the medical records of Defendant, no colonoscopy was performed or ordered, no procedures or tests were performed or ordered to rule out cancer and/or confirm the diagnosis of IBS, Plaintiff Wesley Wade Black was not informed that a colonoscopy was indicated based on his lab results and symptoms to rule out cancer, Plaintiff Wesley Wade Black was not informed that his elevated AST, ALT, and GGT levels were associated with and/or predictive of cancer, and no follow-up appointments were scheduled.

33.    It was not until on or about January 15, 2017 – after years of consistent, repeated complaints indicative and/or suggestive of colorectal cancer, which Defendant should have recognized as early warning signs of colorectal cancer had it not departed from accepted standards of medical care in diagnosing and treating Plaintiff Wesley Wade Black – when Plaintiff Wesley Wade Black presented to the emergency department of WRJ "with bright red blood per rectum" (i.e., hematochezia) that Defendant decided, for the very first time, to "rule out IBD or colon cancer" by ordering a colonoscopy.

34.    When he presented to the emergency department of WRJ on or about January 15, 2017, Plaintiff Wesley Wade Black was examined and received medical services from Defendant, who characterized his chief complaint as "Blood per rectum," and noted that he "[c]hronically will see clots pas[s] with stool or have small amount [b]right red blood on paper or in bowl," which Defendant diagnosed as "[m]ost likely IBS and hemorrhoids or possibly diverticulosis."

35.     Defendant also noted that Plaintiff Wesley Wade Black's "[s]tools tend to be looser since 2011 when left military" (i.e., after he had been exposed to carcinogenic, toxic burn pit fumes).  Defendant noted: "Since 2011 3-4 bowel movements a day 20-30 minutes after eating. Loose or liquid, but loose is the norm.  Will get small pain in stomach before going . . ."  These are the same symptoms of which Plaintiff Wesley Wade Black complained to Defendant consistently since July of 2013.

36.     Defendant tacitly admits that a colonoscopy was long overdue by acknowledging its awareness that Plaintiff Wesley Wade Black had been experiencing "blood per rectum" manifesting as "blood on paper or in bowl" "for quit[e] a while," and "[w]ill occasionally see blood clots mixed with stool," all of which Defendant continuously dismissed as symptoms of IBS since on or about July 11, 2013, without performing or ordering a colonoscopy or any other procedures or tests to confirm that diagnosis or rule out cancer.

37.     Defendant also noted that Plaintiff Wesley Wade Black experiences "chronic" lower gastrointestinal bleeding and, within the preceding twenty-four-hour time period, Plaintiff Wesley Black had three bowel movements, all of which were bloody and the most recent of which filled the toilet bowl with bright red blood.  In addition, while he was in the emergency department, Plaintiff Wesley Wade Black "passed small amount of darker clot," yet was again misdiagnosed with "IBS and hemorrhoids or possibly diverticulosis."

38.     Plaintiff Wesley Wade Black was discharged from WRJ on or about January 16, 2017 and, after years of consistent, repeated complaints indicative and/or suggestive of colorectal cancer, a colonoscopy was ordered.  The colonoscopy was performed on or about February 27, 2017, at which time Plaintiff Wesley Wade Black was diagnosed with aggressive metastatic

adenocarcinoma of the colon with liver and lung metastases – a terminal condition that will cause the premature, wrongful death of thirty-four-year-old Plaintiff Wesley Wade Black.

39.     Plaintiff Wesley Wade Black consistently and repeatedly reported all of the foregoing complaints, signs and symptoms to Defendant from on or about July 11, 2013 through on or about February 27, 2017, when a colonoscopy was finally performed, leading to the aforementioned diagnosis. Defendant did not timely or otherwise generate a differential diagnosis or consider any differential diagnosis that could be causing or consistent with the aforementioned complaints, signs and symptoms consistently and repeatedly reported to Defendant.

40.     Defendant continuously, from on or about July 11, 2013 up to and through February 27, 2017, ignored and overlooked complaints, signs and symptoms that were indications for a colonoscopy, including, but not limited to, unexplained gastrointestinal bleeding, hematochezia, melena, chronic inflammatory bowel disease of the colon, elevated AST, ALT, and GGT, and clinically significant diarrhea of unexplained origin – all of which were consistently and repeatedly experienced and reported by Plaintiff Wesley Wade Black to Defendant from July of 2013 up to and through February 27, 2017.

41.     As a result of the failures of Defendant to timely perform or order a colonoscopy as indicated, perform or order other indicated diagnostic procedures or tests and/or inform Plaintiff Wesley Wade Black of the importance and need for the foregoing to confirm the diagnosis of IBS and rule out cancer, Plaintiff Wesley Wade Black was continuously and consistently misdiagnosed with IBS and not timely diagnosed with cancer, as a result of which his signs and symptoms were mistreated and permitted to progress into aggressive metastatic adenocarcinoma of the colon with liver and lung metastases.

42.     Defendant failed to consider or generate a differential diagnosis, failed to properly diagnosis the complaints, signs and symptoms reported by Plaintiff Wesley Wade Black, misdiagnosed Plaintiff Wesley Wade Black as having IBS without performing a without conducting a colonoscopy or performing any other procedures or tests to rule out cancer and/or confirm the diagnosis of IBS, mistreated the signs exhibited and symptoms suffered by Plaintiff Wesley Wade Black as IBS by, among other things, imposing dietary restrictions and recommending the use of hydrocortisone cream, ignored and overlooked complaints, signs and symptoms that are indications for a colonoscopy, and otherwise misdiagnosed, mistreated, and failed to timely and properly diagnosis and treat Plaintiff Wesley Wade Black.

43.     By the time he was administered proper diagnostic tests and screening for cancer, Plaintiff Wesley Wade Black had developed aggressive metastatic adenocarcinoma of the colon with liver and lung metastases.  Due to Defendant's departures from accepted standards of medical care – including, but not limited to, misdiagnosing Plaintiff Wesley Wade Black with IBS, failing to timely and properly diagnosis and treat Plaintiff Wesley Wade Black and his condition, and mistreating the signs and symptoms from which Plaintiff Wesley Wade Black suffered – Plaintiff Wesley Wade Black was misdiagnosed, mistreated, and not timely diagnosed and/or treated, all of which caused, enabled and/or permitted his aggressive metastatic adenocarcinoma of the colon to develop, spread and metastasize, deprived him of the opportunity to be cured of cancer, deprived him of being able to maximize his life expectancy and will cause his premature death.

44.     At all times relevant herein, Plaintiff Wesley Wade Black has been, and to the present day continues to remain, under the care and treatment of Defendant for the conditions, signs and symptoms identified and set forth herein, which although misdiagnosed and mistreated as IBS, were such as to indicate the existence of colorectal cancer, and were ultimately traceable

to the condition whose misdiagnosis and mistreatment (i.e., colorectal cancer) gives rise to this action. Despite Plaintiff Wesley Wade Black consistently and repeatedly reporting the complaints, signs and symptoms identified and set forth herein, Defendant misdiagnosed him with IBS, mistreated the signs exhibited and symptoms he suffered as stemming from IBS by, among other things, imposing dietary restrictions and recommending the use of hydrocortisone cream, and failed to diagnose and properly treat his condition in a timely manner.

45.    Plaintiff Wesley Wade Black did not, and could not with reasonable diligence have, discovered the critical facts of both his injury, its cause, and the existence of a cause of action until February 16, 2018, at the very earliest, when Thomas Abrams, M.D. – a physician in the Gastrointestinal Cancer Center of the Dana-Farber Cancer Institute – informed him for the first time that his "signs and symptoms from his irritable bowel syndrome were early indicating signs of colorectal cancer," which should "have been discovered sooner" than it was "if further investigation had been done." Such further investigation was especially warranted since Plaintiff Wesley Wade Black was exposed to the carcinogenic, dangerous, and toxic fumes of burn pits, which caused his cancer, according to the opinion of Thomas Abrams, M.D.

## THIS ACTION IS TIMELY

46.    Defendant, by and through the Office of the General Counsel of the United States Department of Veterans Affairs, denied the claims asserted herein based solely on the faulty assumption and belief that the claims accrued on February 27, 2017 – the same day that Plaintiff Wesley Wade Black was diagnosed with aggressive metastatic adenocarcinoma of the colon with liver and lung metastases. Not so. Plaintiffs Wesley Wade Black, Laura Black and R.C.B. did not, and could not with reasonable diligence have, discovered the critical facts of both their injury and *its cause* until February 16, 2018, at the very earliest.

47.     Plaintiffs had no reason to believe that an act or omission by Defendant was a cause of their injury until February 16, 2018 when Thomas Abrams, M.D. informed Plaintiff Wesley Wade Black for the first time that his "signs and symptoms from his irritable bowel syndrome were early indicating signs of colorectal cancer," which should "have been discovered sooner" by Defendant than it was "if further investigation had been done." Prior to receiving that opinion on February 16, 2018, Plaintiffs had no reason to believe that those signs and symptoms were early indicating signs of colorectal cancer.

48.     Prior to February 16, 2018, a reasonably diligent person in the position of Plaintiffs would not have cause to know or suspect, among other things, that: (a) the diagnoses of IBS were incorrect in light of the aggressive metastatic adenocarcinoma of the colon with liver and lung metastases diagnosis; and (b) the development, progression and worsening of the aggressive metastatic adenocarcinoma of the colon with liver and lung metastases was not just the natural progression of his IBS or a separate, unrelated condition with shared symptoms and, instead, was caused by the medical treatment provided by Defendant.

49.     Even assuming Plaintiffs had reason to believe that an act or omission by Defendant was a cause of their injury on February 27, 2017, the claims asserted by Plaintiffs are still timely since Plaintiff Wesley Wade Black has been, and to the present day continues to remain, under the care and treatment of Defendant for the conditions, signs and symptoms identified and set forth herein, which although misdiagnosed and mistreated as IBS, were such as to indicate the existence of colorectal cancer, and were ultimately traceable to the condition whose misdiagnosis and mistreatment (i.e., colorectal cancer) gives rise to this action.

## FIRST CAUSE OF ACTION

*On behalf of Plaintiff Wesley Wade Black*

50.    Plaintiff Wesley Wade Black ("Plaintiff" for purposes of this Cause of Action) reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

51.    At all times relevant herein, Plaintiff Wesley Black was under the continuous care of Defendant.  Defendant, by and through its agents, servants and/or employees acting within the scope of their employment at WRJ or otherwise, owed and undertook a duty to Plaintiff Wesley Black to possess and exercise the degree of knowledge, skill, and care ordinarily possessed and exercised by reasonably skillful, careful, and prudent health care professionals engaged in a similar practice under the same or similar circumstances, which required them to act in accordance with accepted standards of medical care in diagnosing, treating, and providing medical services to Plaintiff Wesley Wade Black.

52.    Defendant, by and through its agents, servants and/or employees, lacked the requisite degree of knowledge or skill and/or failed to exercise the requisite degree of care in diagnosing, treating, and otherwise providing health and medical services to Plaintiff.  Defendant, by and through its agents, employees and/or servants, including, but not limited to, Katherine Devine, MD, Emilie V. Hill, MD, John G. Ryder, MD, David J. Nagel, MD, Marshall A. Guill, MD, Anthony Joseph Bambara, MD, Gladys J. Frankel, Ph.D., Virginia Arvold, PA, Crystal Colby, PA, Alisha S. Hartley, RN, Caroline Nord, NP, and Anne-Marie Roberts, was reckless, careless, negligent and departed from accepted standards of medical care in the care and treatment of Plaintiff Wesley Wade Black in failing to adequately, properly and timely diagnose and treat Plaintiff and his condition; in misdiagnosing Plaintiff's condition; in misdiagnosing Plaintiff's

condition as irritable bowel syndrome, anal fissures and/or hemorrhoids; in misdiagnosing Plaintiff's condition as irritable bowel syndrome, anal fissures and/or hemorrhoids without performing a colonoscopy or any other tests to rule out colon cancer and/or confirm the diagnosis of irritable bowel syndrome, anal fissures and/or hemorrhoids; in mistreating Plaintiff; in mistreating the signs exhibited and symptoms suffered by Plaintiff; in mistreating the signs exhibited and symptoms suffered by Plaintiff as stemming from irritable bowel syndrome, anal fissures and/or hemorrhoids; in mistreating the signs exhibited and symptoms suffered by Plaintiff, which were such as to indicate the existence of colorectal cancer, and were ultimately traceable to colorectal cancer; in mistreating the signs exhibited and symptoms suffered by Plaintiff by imposing dietary restrictions and recommending the use of hydrocortisone cream, as opposed to surgery, chemotherapy, radiation, or other treatments sufficient to cure or treat colorectal cancer; in failing to diagnose and treat, timely or otherwise, Plaintiff's condition, including, but not limited to, cancer of the colon; in failing to diagnose and treat, timely or otherwise, cancer of the liver; in failing to diagnose and treat, timely or otherwise, cancer of the lung; in allowing, causing, permitting and/or failing to prevent Plaintiff from developing cancer of the colon, liver and/or lungs; in allowing, causing, permitting and/or failing to prevent Plaintiff from developing metastatic adenocarcinoma of the colon with liver and lung metastases; in failing to cure cancer; in allowing, causing, permitting and/or failing to prevent the condition of Plaintiff, including, but not limited to, rectal bleeding, abdominal pain, anal fissures, loose stool, multiple bowel movement and anal irritation, to be, become and develop into cancer and metastasize; in failing to appropriately, properly and/or timely consider, diagnose, evaluate, treat and/or follow-up on the complaints made by, the condition of, and/or the symptoms exhibited by Plaintiff, including, but not limited to, rectal bleeding, abdominal pain, anal fissures, loose stool, multiple bowel

movement and anal irritation; in failing to take an adequate, correct, detailed and proper history; in recording an inadequate, incomplete, erroneous, and improper history; in failing to properly treat Plaintiff's cancer; in failing to properly interpret complaints, signs, symptoms and/or conditions; in failing to have Plaintiff and his condition diagnosed, examined and treated by the appropriate specialists, including, but not limited to, gastroenterologist, proctologists, radiologists and/or oncologists; in failing to refer Plaintiff to the appropriate specialists, including, but not limited to, gastroenterologist, proctologists, radiologists and/or oncologists; in failing to adequately, properly and timely administer and perform the appropriate biopsies, colonoscopies, physical examinations and other tests; in failing to appropriately, properly and/or timely consider, diagnose, evaluate, treat and/or follow-up on unexplained gastrointestinal bleeding; in failing to appropriately, properly and/or timely consider, diagnose, evaluate, treat and/or follow-up on the presence of fecal occult blood; in failing to test and/or screen for colonic neoplasia; in failing to conduct an examination to evaluate the entire colon for synchronous cancer or neoplastic polyps; in failing to timely conduct a colonoscopy; in failing to conduct colonoscopy to remove synchronous cancer or neoplastic polyps; in failing to conduct an adequate clearance of neoplastic polyp(s); in failing to conduct a colonoscopy to diagnose and/or treat inflammatory and/or irritable bowel disease; in failing to conduct a colonoscopy to rule out colon cancer and/or confirm the diagnosis of inflammatory and/or irritable bowel disease; in failing to appropriately, properly and/or timely consider, diagnose, evaluate, treat and/or follow-up on significant diarrhea of unexplained origin; in failing to conduct electrocoagulation, heater probe, laser and/or injection therapy; in failing to appropriately, properly and/or timely consider, diagnose, evaluate, interpret, treat and/or follow-up on complaints, signs, and symptoms indicative and/or suggestive of cancer, despite knowing Plaintiff was exposed to burn pits and, therefore, at an increased risk of

developing cancer; in failing to conduct computed tomography colonography; in failing to conduct a sigmoidoscopy; in failing to conduct a fecal occult blood test and/or fecal immunochemical test; in failing to conduct a double contrast barium enema; in failing to conduct stool tests; in failing to conduct stool DNA tests; in failing to conduct an X-ray, CT scan or other diagnostic imaging or testing; in diagnosing irritable bowel syndrome without ruling out colon cancer or conducting any tests, including, but not limited to, colonoscopy, lactose intolerance tests, breath tests for bacterial overgrowth, upper endoscopy, and/or stool tests; in failing to conduct a virtual colonoscopy; in repeatedly advising, assuring and informing Plaintiff that his rectal bleeding, abdominal pain, anal fissures, loose stool, multiple bowel movement and anal irritation were the result of irritable bowel syndrome and not anything more serious or life threatening; in failing to timely diagnose or perform any tests to rule out colon cancer despite persistent complaints of changes in bowel habits, including, but not limited to, diarrhea, constipation and change in the consistency of stool; in failing to timely diagnose or perform any tests to rule out colon cancer despite persistent complaints of rectal bleeding and blood in stool; in failing to timely diagnose or perform any tests to rule out colon cancer despite persistent complaints of abdominal discomfort, cramps, gas, and pain; in failing to timely diagnose or perform any tests to rule out colon cancer despite persistent complaints by Plaintiff that his bowel did not empty completely; in failing to timely diagnose or perform any tests to rule out colon cancer despite persistent complaints of weakness and fatigue; in failing to appropriately, properly and/or timely diagnose, evaluate, identify, and/or treat polyps; in repeatedly indicating and stating in Plaintiff's medical records that he was diagnosed with irritable bowel syndrome, when no steps to confirm the aforementioned diagnosis were taken; in abandoning and discharging Plaintiff; in abandoning and discharging Plaintiff, despite his rectal bleeding, abdominal pain, anal fissures, loose stool, multiple bowel movement and anal irritation;

in failing to appropriately, properly and/or timely consider, document and/or evaluate Plaintiff's environmental/occupational exposures during his time of service; in causing Plaintiff to require and undergo further hospitalizations and other treatment; in aggravating, delaying the healing and treatment of, exacerbating, and prolonging Plaintiff's condition; in failing to timely order a consult with the appropriate specialist; in failing to consistently and accurately chart the complaints made by Plaintiff and/or the symptoms exhibited by Plaintiff; in failing to treat Plaintiff in accordance with the proper and accepted standards of medical practice and in deviating from the proper and accepted standards of medical care; in failing to provide necessary services to attain and maintain the highest practicable physical, mental, and psychosocial well-being in accordance with a comprehensive assessment and plan of care; in failing to develop, implement, and alter when necessary a care plan to meet Plaintiff's needs; in prescribing and ordering improper and ineffective treatment; in allowing, causing, permitting and failing to prevent cancer to spread and metastasize; in allowing, causing, permitting and failing to prevent Plaintiff from losing a chance of survival, longer life span, cure and/or better outcome; in depriving Plaintiff of a chance of survival, longer life span, cure and/or better outcome; in reducing Plaintiff's chance of survival, longer life span, cure and/or better outcome; in increasing the risk of an unfavorable outcome; in failing to document, monitor and report changes in Plaintiff's condition to his physician(s); in failing to provide appropriate medical care when it was known or should have been known that such care was needed; in failing to maintain a proper and accurate medical record by failing to keep and maintain a medical record that fully and accurately reflects the care and treatment rendered and documents the condition of Plaintiff; in failing to properly train and supervise individuals who provided care and treatment; in failing to have proper and adequate rules and regulations in effect; in failing to timely address rectal bleeding, abdominal pain, anal fissures,

loose stool, multiple bowel movements and anal irritation throughout the course of treatment; in failing to have sufficient and efficient personnel; in launching a force or instrument of harm; in aggravating, causing, contributing to, exacerbating, and worsening the condition of Plaintiff; in performing medical and nursing services with negligence, gross negligence, and incompetence on more than one occasion; in performing medical and nursing services with gross incompetence; in attempting to cover up what occurred; in failing to allow medical providers rendering treatment to Plaintiff to have access to Plaintiff's full medical file and history; in only allowing the medical providers rendering treatment to Plaintiff to access two years of medical history; in intentionally concealing, deleting and/or destroying portions of Plaintiff's medical records; in intentionally concealing, deleting and/or destroying portions of Plaintiff's medical records in an attempt to cover-up the failure to timely diagnosis Plaintiff with cancer and evade liability for medical malpractice; in causing and failing to avoid injuries, including, but not limited to, cancer of the colon, lungs and liver, cancer metastasis to lungs and liver, extreme and severe pain and suffering, mental anguish and distress, and additional emergency treatment and hospital admissions; in lacking the requisite degree of knowledge and skill, and failing to exercise the requisite degree of care; in failing to meet the ongoing responsibility to pay for the reasonable care and treatment of Plaintiff at outside facilities necessary for his condition; in failing to inform Plaintiff that it lacked the facilities, experience, skill, qualifications and medical know how to properly render care and treatment for his condition and that, if he were treated by providers with the requisite facilities, experience, skills, qualifications and medical know how, he would have a much greater opportunity for successful diagnosis and treatment; and Defendant was otherwise reckless, careless and negligent and departed from accepted standards of medical care in the care and treatment of Plaintiff.

53.     As a proximate result of the foregoing, including, but not limited to, the lack of the requisite knowledge and skill possessed by Defendant and/or the failure of Defendant to exercise the requisite degree of care, Plaintiff Wesley Wade Black suffered injuries that would not otherwise have been incurred, including, but not limited to: aggressive metastatic adenocarcinoma of the colon, which was allowed, caused and/or permitted to spread and metastasize to his liver, lungs and elsewhere; cancer progressing and/or metastasizing to his liver, lungs, and/or elsewhere; cancer progressing to multiple bilobular liver metastasis; cancer progressing to colorectal metastases; cancer progressing to invasive adenocarcinoma of the colon; cancer progressing to multiple hepatic masses; cancer progressing to numerous hypodense lesions scattered throughout the right and left liver lobes; cancer progressing to multiple invasive tumors; the conditions identified in medical records of Defendant and WRJ, which are incorporated herein as if set forth in full; abdominal pain; worsening of abdominal pain; anal tears; worsening of anal tears; anal itching; worsening of anal itching; anal irritation; worsening of anal irritation; bowel pain; worsening of bowel pain; bowel problems; worsening of bowl problems; bowel disturbances; worsening of bowel disturbances; constipation; worsening of constipation; diarrhea; worsening of diarrhea; loose stools; worsening of loose stools; rectal bleeding; worsening of rectal bleeding; irritable bowel syndrome; worsening of irritable bowel syndrome; unexplained gastrointestinal bleeding; worsening of unexplained gastrointestinal bleeding; hematochezia; worsening of hematochezia; chronic inflammatory bowel disease of the colon; worsening of chronic inflammatory bowel disease of the colon; clinically significant diarrhea of unexplained origin; worsening of clinically significant diarrhea of unexplained origin; anxiety, depression, fear, and panic; severe pain and suffering; mental anguish and distress; required emergency treatment and hospital admissions, and will require emergency treatment and hospital admissions in the future;

caused to undergo aggressive chemotherapy for metastatic colon cancer; severe abdominal and rectal pain; severe nausea; required and will require Leucovorin, Oxaliplatin, Bevacizumab, Fluorobacil, Leucovorin, Oxaliplatin, Bevacizumab, and other cancer and related condition medications; severe chills; fatigue and inability to sleep; chills, vomiting, emesis, restlessness, digestive pain, blisters, rash, weakness, lethargy, and rigor; skin soreness due to ports; abdominal, joint pains, headaches, pain on defecation, back, and neck pain; neuropathy in hands; nose bleeds; peeling of the skin; decreased energy levels; inability to exercise and perform household duties; required and will require CADD pump; required and will require colonoscopies, MRI's, CT's, and other diagnostic and invasive testing; abscess to the thigh; loss of quality of life; pain and suffering; loss of consortium and services; loss of income; loss of earning capacity; severe acne, bleeding, breaking out, hives, and sores; required and will require multiple invasive surgeries, including, but not limited to, open low anterior resection with anastomosis; required and will require multiple resections, colonoscopies, sigmoidectomies; required and will require emotional care, therapy, and counseling; abdominal wall weakness requiring mesh repair; severe nerve pain throughout the body; required and will require abdominal binder; required and will require therapy and psychotherapy; required to donate sperm to sperm bank due to fear of future, becoming infertile, and dying; severe dehydration; deprived of the opportunity to be treated and cured of cancer; deprived of being able to maximize life expectancy; impending premature, wrongful death; fear of inability to have children in the future, raise his family, and grow old with his wife; inability to engage in activities of daily living or enjoyment of life; inability to provide comfort and support to his child and family; deprived of bonding with his son; loss of sex drive; decreased sexual intimacy with wife; unable to perform activities of daily living; unable to perform job duties and responsibilities as previously; forced to undergo experimental treatments; fear of side-effects and

long-term effects of treatments; past and future loss of earnings, insurance, pension benefits, and other benefits and insurance; ongoing and continuous invasive palliative treatment; significant pain and suffering, mental and emotional injury; and Plaintiff has been otherwise damaged, all of which damages are permanent in nature and will continue.

54.     Moreover, while Plaintiff is currently employed full-time by the State of Vermont as a firefighter, the medical conditions from which Plaintiff is and has been suffering, as well as the medical treatments he has received to treat those conditions, have adversely impacted his ability to continue to perform his job duties, be gainfully employed, and dramatically decreased his life expectancy and work-life expectancy, as a result of which Plaintiff has suffered past loss of earnings and will suffer future loss of earnings as a proximate result of the negligence of Defendant and their departures from accepted standards of medical care in the care and treatment of Plaintiff.

55.     By reason of the foregoing, Plaintiff Wesley Wade Black is entitled to recover all of his damages from Defendant.

## SECOND CAUSE OF ACTION

*On behalf of Plaintiff Wesley Wade Black*

56.     Plaintiff Wesley Wade Black ("Plaintiff" for purposes of this Cause of Action) reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

57.     Defendant, by and through its agents, servants and/or employees, had a duty to disclose in a reasonable manner all significant medical information they possessed, or reasonably should have possessed, material to an intelligent decision by Plaintiff Wesley Wade Black to accept, decline, receive and/or undergo medical care, colonoscopies, diagnostic testing,

procedures, and/or other testing.  These disclosures included, but were not limited to, informing Plaintiff Wesley Wade Black that: a colonoscopy was indicated based on his complaints, symptoms, and/or lab results; a colonoscopy was indicated and/or necessary to confirm the diagnosis of IBS and rule out cancer; and his elevated AST, ALT, and GGT levels were associated with and/or predictive of cancer.

58.     The foregoing, required disclosures were not made by Defendant to Plaintiff Wesley Wade Black and, as a proximate result, Plaintiff Wesley Wade Black did not accept, seek to have, undergo, and/or submit to a colonoscopy and/or other procedures, tests, or diagnostic processes to determine whether his signs and symptoms, which were misdiagnosed by Defendant as manifestations of IBS, were, as they ultimately turned out to be, caused by and/or indicative of cancer and, thus, incurred damages and injuries as set forth herein, which would not otherwise have been sustained by Plaintiff Wesley Wade had such disclosures been timely made.

59.     By reason of the foregoing, Plaintiff Wesley Wade Black is entitled to recover all of his damages from Defendant.

### THIRD CAUSE OF ACTION

*On Behalf of Plaintiff Laura Black*

60.     Plaintiff Laura Black ("Plaintiff" for purposes of this Cause of Action) reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

61.     At all relevant times, Plaintiff Laura Black was, and continues to be, lawfully married to Plaintiff Wesley Wade Black.

62.     As a direct and proximate cause of the negligence of Defendant, Plaintiff Laura Black has suffered, and will continue to suffer: the loss of consortium, intimacy, service, society,

and support of her husband; the loss of the income and earning capacity of her husband, a firefighter employed by the State of Vermont; and the loss of survivor benefits to which she would have been entitled as a spouse of a firefighter employed by the State of Vermont, as well as other benefits, including, but not limited to, pension benefits, health insurance, and other insurance and benefits.

63.     As a direct and proximate cause of the negligence of Defendant, Plaintiff Laura Black has been forced, and will continue to be forced: to provide care-taking, nursing, medical and other services for her husband, the reasonable value of which she is entitled to recover; to raise Plaintiff R.C.B. without the parental guidance, service, or support of her husband; and, due to the imminent, premature death of her husband, will become a widow and single-mother, forcing her to have address, contend with, and seek to prevent the issues and problems arising from the absence of a father-figure in the life of her son, Plaintiff R.C.B.

64.     By reason of the foregoing, Plaintiff Laura Black is entitled to recover all of her damages from Defendant.

## FOURTH CAUSE OF ACTION

*On behalf of Plaintiff R.C.B.*

65.     Plaintiff R.C.B. ("Plaintiff" for purposes of this Cause of Action) reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

66.     At all relevant times, Plaintiff R.C.B. is the biological and lawful son of Plaintiffs Laura Black and Wesley Wade Black.

67.     As a direct and proximate cause of the negligence of Defendant, Plaintiff R.C.B. has suffered, and will continue to suffer: the loss of consortium, service, society, support, parental

guidance, and parental support of his father; the loss of the loss of the income and earning capacity of his father, a firefighter employed by the State of Vermont; and the loss of survivor benefits to which he would have been entitled as a child of a firefighter employed by the State of Vermont, as well as other benefits, including, but not limited to, pension benefits, health insurance, and other insurance and benefits.

68.     As a direct and proximate cause of the negligence of Defendant, which will result in the imminent, premature death of Plaintiff Wesley Wade Black, Plaintiff R.C.B. will be forced to grow-up without a father-figure, the absence of which will cause or increase the chances of Plaintiff R.C.B. suffering the devastating effects caused by the absence of a father, including, but not limited to, diminished self-concept, compromised physical and emotional security, feelings of abandonment, self-loathing, behavioral problems, difficulties with social adjustment, truancy, poor academic performance, delinquency, alcohol and drug abuse, physical health problems, including, but not limited to, pain, asthma, headaches and stomach aches, mental health disorders and problems, including, but not limited to, anxiety, and depression, unemployment, low income, and divorce, among others.

69.     By reason of the foregoing, Plaintiff R.C.B. is entitled to recover all of his damages from Defendant.

WHEREFORE, Plaintiffs demand judgment against Defendant to recover all damages properly recoverable, together with interest and costs.

Respectfully Submitted,

Arend R. Tensen
**CULLENBERG & TENSEN, PLLC**
199 Heater Road, Suite 2
Lebanon, NH 03766
(603) 448-7100

26

tensen@nhvt-injurylaw.com

Daniel C. Perrone (Pro Hac Vice Forthcoming)
**PERRONE LAW PLLC**
2136 Victory Boulevard
Staten Island, New York 10314
(646) 470-9244
dcp@theperronefirm.com